ERASTUS RANDALL *vs.* ABRAHAM MORRELL and HORACE E. BROWNE.

1. Upon a bill between partners for closing the affairs of a partnership, after a dissolution of the firm, the insolvency of the defendant will entitle the complainant to the appointment of a receiver, and an injunction.

2. Where the answer is not responsive to the allegations of the bill, the injunction will be retained.

3. A partner, defendant to a bill for an account, will not be allowed to take possession of funds to which the firm has claims, until his right shall have been established by final decree.

4. The complainant having failed to prosecute his suit with proper diligence, charged with the costs of the motion to dissolve.

This cause was heard upon a motion to dissolve the injunction which issued upon filing the bill.

*Mr. Ransom* and *Mr. I. W. Scudder*, for defendants, in support of the motion.

*Mr. Gilchrist*, for complainant, contra.

BEASLEY, C. J., sitting as Master.

This is a controversy between partners. The bill alleges that in the year 1855, the complainant engaged in the commission business with the defendant, Morrell, and that at a subsequent period, the other defendant, Browne, became a member of the firm. This connection of Browne with the concern is denied by him, and as the fact is immaterial to the present purpose, that denial will be accepted as true.

The objects of the suit are to obtain an account, the appointment of a receiver, an injunction to prevent the defendant from collecting the debts, or disposing of the property of the firm, and to have the partnership affairs wound up under the surpervision of this court. The injunction, as prayed for, was granted on the filing of the bill, and the present motion is to obtain its dissolution.

The grounds upon which the injunction was originally obtained, and upon which it is now sought to be sustained, consist principally of allegations of fraud and insolvency on the part of the defendant. These charges are various and comprehensive, and have elicited a voluminous answer, which is deformed by much irrelevant matter. Affidavits also have been taken on both sides, which relate to many minute affairs, not pertinent, and which can have no influence on the decision of the present issue. Not content with endeavoring to repel the imputations of fraud against himself, contained in the bill, the defendant, in his turn, becomes the accuser, and charges the complainant with misappropriations of the funds of the co-partnership, and with other conduct, scandalously fraudulent.

Assuming, as the truth, but a small part of the delinquencies charged by these parties against each other, it is clear that it would be the duty of the court to prevent either from obtaining possession of the assets of the firm, as well for the purpose of enforcing a decent honesty in the settlement of the partnership affairs, as for insuring ordinary justice to creditors. But it is not necessary, nor would it be proper for me, on this argument, to attempt to deal with the mass of these criminations, for most of such questions can only be fairly adjudged on the final hearing. At present, it is sufficient to inquire whether the defendant has made it clear, that if he shall be permitted to collect the moneys of the firm, they will be safe in his hands, and that they will be appropriated as equity requires. In the view which I take of this question, whether regarded as a matter of fact, or with reference to the rules of law which bear upon it, but a very few of the particulars so elaborately discussed by counsel are involved, necessarily, in its consideration. Those circumstances which have led me to a result, I will state, with all the brevity which is consistent with the clear indication of the facts and legal principles on which my decision rests.

It is admitted that the partnership has been dissolved by

Randall *v.* Morrell et al.

mutual consent, and, as a necessary result, its concerns are to be adjusted and finally settled under the control of this court. It has become, therefore, the province of this tribunal to see that the assets are properly preserved and distributed; and this is a duty which it owes, not only to the members of the co-partnership, but to creditors who are peculiarly objects of its care and protection. In addition to this, I regard, as at present advised, the defendant as insolvent. This, as it seems to me, is the only reasonable conclusion which can be drawn from the proofs. The fact of insolvency is explicitly charged in the bill, and the answer of the defendant on this point, if not evasive, is at least ambiguous, and, in the highest sense, unsatisfactory. This answer is couched in the following terms, viz. "And this defendant denies that he was unable to put any capital into the said business, or that he was insolvent when the said co-partnership was formed, or at any time after the formation of the partnership, or was at any time unable to pay his debts, unless the advances which he has made to the said firms of Morrell and Randall, and Randall and Morrell, shall have made him so." Now, I think it is obvious that, for all practical purposes, this language must be held to import an admission that the defendant is insolvent at the present time. He declares he was not insolvent at the time of the inception of the partnership, which was in the year 1855, and he then avers that since that date he has not been so, unless his advances to the firm have reduced him to that condition. The advances, thus alluded to, exceeding in amount $20,000, are matters in dispute in this cause. The complainant denies, *in toto*, the fact of their having been made. In order, therefore, to assume the present solvency of the defendant, I am called upon, at this juncture, to decide this important fact in his favor. I cannot but conceive that it would be highly improper and hazardous to do this. I am not willing, by adopting so ill founded a conclusion, to jeopardize the interests of the complainant and those of creditors. I am constrained, therefore, to regard the fact of

Randall *v.* Morrell et al.

the present inability of the defendant to pay his debts, as established.

If my conclusions against the case of the defendant rested here, I should be inclined to the opinion that the injunction ought not to be dissolved. In this state of affairs, according to my understanding of the rules of a court of equity, a clear case is made for the appointment of a receiver. In the courts of New York, and elsewhere, it has been adopted as an established rule, that on a bill for closing the affairs of a partnership, when it is admitted that the firm has been dissolved, the appointment of a receiver follows as a matter of course. *Law* v. *Ford*, 2 *Paige* 310; *Marten* v. *Van Schaick*, 4 *Paige* 479.

It is true that this course of decision has not been followed with exact conformity in this state, but the principle has been adopted, subject to the important qualification, that even after a dissolution, a receiver will be appointed only when it appears necessary to protect the interests of the parties. The rule in this restricted, and, as it seems to me, highly reasonable form, will be found propounded and elucidated in the cases of *Renton* v. *Chaplain*, 1 *Stockt.* 62; *Birdsall* v. *Colie*, 2 *Stockt.* 63; *Cox* v. *Peters*, 2 *Beas.* 41.

But that the circumstance of the insolvency of one of the partners, in addition to the fact of the dissolution of the firm, would, under ordinary circumstances, induce this court to assume the administration of the partnership affairs, I think admits of no doubt. And it seems equally clear, that when the court proceeds on this consideration, an injunction is an almost indispensable auxiliary to a receiver. The insecurity of the assets, if left under the power of an insolvent member of a dissolved firm, is the motive, in such case, upon which the judicial action is based; and it applies, with equal force, to the allowance of an injunction as to the appointment of a receiver. It is only by the united efficacy of these two safe-guards that, when insolvency supervenes, the assets of the co-partnership can be secured and preserved for the benefit of those to whom they equitably belong.

I think, therefore, the conjoint effect of the admitted dissolution of this partnership, and the insolvency of the defendant, would fully justify me, acting on the ordinary principles of this court, in advising the continuance of the injunction ; but I do not rest my decision entirely on that ground.   There is another circumstance, which, to my mind, is decisive.

The bill charges that the defendant, in his accounts, and in the books of the company, has credited himself with advances, in the form of capital, to an amount exceeding $20,000; and it further charges that this money has not, nor has any part of it, been so advanced, and that such entries are false and fraudulent.   It also interrogates upon this subject, and calls for a particular statement of the times when such pretended advances were made, in what amounts, and whence such moneys were derived.   These questions have not been fairly answered.   The whole subject has been left in the utmost obscurity by the defendant.   The inquiry touched his character for honesty, and yet he has not met it, as only it could properly be met, by a complete elucidation. He says he put in this capital, in two sums of about ten thousand dollars each, and the residue on another occasion.   He designates no dates, though expressly required to do so.   He thinks he must have put in, in all, about thirty thousand dollars, but he claims a much less sum.   He says the books were originally kept in so loose a way that they do not show, in any intelligible form, these alleged contributions to the capital, although such books were almost exclusively under his own supervision.   Nor does he attempt to explain how such large sums could be carried into the affairs recorded in the books, without leaving any appreciable indications of their receipt.   Finally, although interrogated on the point, he makes no disclosure of the sources whence these moneys were derived.   Under these circumstances, I consider this claim in the highest degree suspicious.   It is clear that the bill, in this important respect, is not answered, and upon

well established principles, the injunction, for this reason, should be retained.

But in addition to this feature of the case, it further appears that the firm has claims to a very large amount against the government of the United States, for property appropriated, during the war, to the public use. One of these claims has already been adjusted, and admitted to be due by the public authorities, and if this injunction should be dissolved, this large sum of money will pass immediately into the hands of the defendant. If he should obtain the control of this fund, he would, undoubtedly, consider a large portion of it to belong to himself, on account of his alleged contributions to the capital. Entertaining this notion of his rights, he would probably apply such moneys to his own individual uses. To permit this to take place would be equivalent, so far as the interests of the complainant are concerned, to a dismissal of his bill. Its practical effect would be the same as a decision of the cause, at this stage, in favor of the defendant. The plainest considerations of justice require that the funds in question should not be allowed to pass into the possession of the defendant, until his right to them shall have been established by a final decree. The points of argument antagonistic to the foregoing view, urged by the counsel of the defendant, have received due consideration. The principal position taken was, that after the complainant had knowledge of the alleged fraudulent entries in the books by the defendant, in his own favor, he executed a power of attorney to him, authorizing him to enforce the claims against the government, and to collect the assets. But, under the circumstances as they then probably appeared to the complainant, it does not appear that his conduct was at variance with a belief, on his part, in the dishonesty of the defendant. It is clear that he then regarded the firm as hopelessly insolvent. His whole time was absorbed in affairs of great magnitude connected with his individual business. All his knowledge concerning the claims against the government, appears to have been derived from the defendant, and he

could scarcely feel assured of their authenticity. In fact, he seems to have been in a position where he had but a choice between an alternative of evils; that is, to suffer the claims against the United States to lie unenforced, or to trust their prosecution to the defendant. I think it is fair to infer, that he confided in the defendant from the compulsion of circumstances. I do not think this forced confidence purges the defendant from the suspicion which attaches to his conduct in the particular referred to.

My conclusion is, that the present motion should be denied, but as the complainant has not exhibited proper diligence in the prosecution of his suit, I shall advise his honor, the Chancellor, to make that order, without costs.